Winford L. **STOKES**, Jr., Appellant,

v.

William M. **ARMONTROUT**, William L. Webster, Appellees.

No. 86–2598.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 11, 1987.

Decided July 13, 1988.

Rehearing Denied Sept. 9, 1988.

Richard J. Eisen, St. Louis, Mo., for appellant.

Stephen D. Hawke, Jefferson City, Mo., for appellee.

Before McMILLIAN, ARNOLD, and BOWMAN, Circuit Judges.

BOWMAN, Circuit Judge.

Winford Stokes appeals the denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. We affirm.

Stokes was convicted of capital murder in the Circuit Court of St. Louis County in October 1979. He was sentenced to death.

The conviction was affirmed by the Missouri Supreme Court. *State v. Stokes*, 638 S.W.2d 715 (Mo.1982) (en banc). Petitioner then moved to vacate the judgment under Missouri Supreme Court Rule 27.26.[1] The St. Louis Circuit Court held an evidentiary hearing and denied petitioner's motion. The Missouri Court of Appeals affirmed the circuit court's denial of post-conviction relief. *Stokes v. State*, 688 S.W.2d 19 (Mo. Ct.App.1985). In June 1985 Stokes filed the instant federal habeas corpus petition. It was referred to a federal magistrate,[2] who wrote a 32–page report recommending that the petition be denied. *Stokes v. Armontrout*, No. 85–1496 C (6), Report & Recommendation, (Sept. 22, 1986). In November 1986 the District Court[3] adopted the magistrate's recommendation.

Petitioner asserts ten grounds for relief: (1) the State improperly withdrew from a plea agreement; (2) the State's endorsement of twenty-five new witnesses on the day of trial and his attorney's failure to interview these witnesses deprived petitioner of his constitutional right to effective cross-examination; (3) he was denied due process when the State was allowed to give notice of its evidence in aggravation on the day of trial, and by the State notifying him only one month before trial of its intent to seek the death penalty; (4) he was denied due process and effective assistance of counsel when the court refused to grant a continuance after the State's late endorsements, and his attorney failed to interview five witnesses who did testify; (5) his attorney was ineffective because he failed to raise the issue of the court's error in not instructing the jury on the lesser-included offense of first degree murder in petitioner's motion for new trial; (6) his attorney was ineffective because he did not prepare for or present any evidence in the sentencing phase of the trial; (7) his right to a speedy trial was violated, inter alia, by the sixteen-month delay between indictment

---

**1.** Rule 27.26 was repealed, effective January 1, 1988. Post-conviction relief is now available under Rule 29.15.

**2.** The Honorable David D. Noce, United States Magistrate for the Eastern District of Missouri.

**3.** The Honorable George F. Gunn, Jr., United States District Judge for the Eastern District of Missouri.

and trial; (8) his attorney was ineffective because he submitted a deficient motion for new trial; (9) his attorney was ineffective because he wrote a deficient brief on direct appeal; and (10) he was denied due process because the jury was "death-qualified."

After painstakingly examining the District Court record and the entire state court record, we find that only three issues—grounds one, five, and six—require discussion on our part.

## I.

Stokes's first claim is for specific enforcement of a plea agreement he rejected in St. Louis County Circuit Court. In September 1979 Stokes had seven felony charges, including capital murder, pending against him in St. Louis City, in addition to the unrelated capital murder charge in St. Louis County on which we focus today. As Stokes's City trial drew near, he and his trial counsel reached an agreement with the St. Louis City and County prosecutors whereby Stokes would plead guilty to second degree murder in both City and County courts, and the State in both cases would recommend fifty year sentences, to be served concurrently. On September 10, 1979, Stokes pled guilty in the City court to second degree murder, two counts of first degree robbery, armed criminal action, two counts of escaping custody, and stealing a motor vehicle. In keeping with the plea agreement, the City prosecutor recommended fifty years, and the City judge gave sentences for all the crimes totaling fifty years. Unfortunately, a local newspaper incorrectly reported that Stokes had received a seventy year sentence.

Ten days later, Stokes was transferred to St. Louis County. At the second plea proceeding on September 20, 1979, after a two or three minute discussion with counsel off the record, Stokes refused to plead guilty to second degree murder in the County court. Stokes told his attorney that he felt that the State was "lying on" him. Attorney and client had difficulty communicating; the judge was unaware that Stokes may have been confused. When the plea session broke down, the County prosecutor promptly withdrew the amended indictment for second degree murder, and reinstated the original indictment for capital murder. That afternoon, Stokes met with his attorney and showed him the erroneous newspaper article. Once the lawyer explained that the article was incorrect, the defendant was again ready to plead guilty in the County. The next morning, however, when Stokes's counsel told the County prosecutor about his client's confusion and his renewed willingness to plead guilty, the prosecutor said that the State would not re-extend its offer. Stokes was tried for the crime of capital murder, and was convicted.

In his habeas petition, Stokes claims that the State improperly withdrew its offer for a plea bargain on the capital murder charge in the County. He asserts that the City and County plea agreements comprised a single, two-part package deal between him and the State. Because he partially performed by pleading guilty to the capital murder charge (and other charges) in the City, he argues that he detrimentally relied on the State's promise to recommend a fifty year concurrent sentence on the unrelated capital murder charge in the County, and that the State was estopped from withdrawing its offer concerning the latter charge during his brief period of confusion. Stokes claims that the State withdrew its offer so that it could use the City guilty pleas as evidence of aggravating circumstances for the death penalty, and for impeachment purposes if Stokes had decided to testify.

Stokes did not raise this issue on direct appeal to the Missouri Supreme Court. He first presented it as part of an ineffective assistance allegation in his Rule 27.26 motion. The Rule 27.26 court found that his trial counsel had fully explained the agreement to Stokes, and that the attorney had properly contacted the County in an effort to re-open the original deal after the failed plea proceeding. In reviewing the findings of the Rule 27.26 court, the Missouri Court of Appeals stated: "The record clearly establishes that [Stokes], not the state, reneged on the plea agreement. But for the action of [Stokes], he would have been sen-

tenced in the county circuit court in accordance with the original plea agreement." *Stokes*, 688 S.W.2d at 22. The magistrate drew the same conclusion.

■ A criminal defendant has no constitutional right to bargain for a plea arrangement with the government. *Weatherford v. Bursey*, 429 U.S. 545, 561, 97 S.Ct. 837, 846, 51 L.Ed.2d 30 (1977). If the parties do decide to negotiate, however, the defendant is entitled, under the Due Process Clause of the Constitution, to "presuppose fairness in securing [the plea] agreement.... [W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 261–62, 92 S.Ct. 495, 498–99, 30 L.Ed.2d 427 (1971).

■ The Supreme Court narrowed the broad "fairness" guarantee of *Santobello* in *Mabry v. Johnson*, 467 U.S. 504, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984), establishing that plea bargaining generally does not trigger constitutional considerations until the plea of guilty has been entered.[4]

> A plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest. It is the ensuing guilty plea that implicates the Constitution. Only after respondent pleaded guilty was he convicted, and it is that conviction which gave rise to the deprivation of respondent's liberty at issue here. *Id.* at 507–08, 104 S.Ct. at 2546 (footnotes omitted).

Once a guilty plea has been entered, "[c]ontract principles often provide a useful means by which to analyze the enforceability of plea agreements and ensure the defendant what is reasonably due him in the circumstances." *United States v. McGovern*, 822 F.2d 739, 743 (8th Cir.), *cert.*

denied, — U.S. ——, 108 S.Ct. 352, 98 L.Ed.2d 377 (1987). "A plea agreement, however, is not simply a contract.... It necessarily implicates the integrity of the criminal justice system. ..." *id.*, and involves "myriad ... collateral considerations such as expectations of fundamental fairness by the Defendants, [and the] efficient administration of justice." *United States v. Smith*, 648 F.Supp. 495, 498 (S.D. Tex.1986). In Stokes's case, we hold that the State's clear and prompt withdrawal of its offer—after Stokes had repudiated the agreement—violated neither the law of contracts nor the Constitution.

First, we dismiss Stokes's suggestion that he did not actually reject the State's offer, but that he merely took it under further consideration. The facts are clear. During the failed plea proceeding in the County court, Stokes stated: "I'm not going to plead guilty." *State v. Stokes*, No. 409734, Transcript of Plea Proceeding in Circuit Court of St. Louis County at 2 (Sept. 20, 1979). The County prosecutor replied: "Your Honor, in that case, since, as I stated in my announcement as a result of specific plea negotiations and, therefore, since that is not going through with, the State would like to withdraw the [second degree murder] amendment and stand on the original Indictment of Capital Murder." *Id.* at 2–3. Stokes's attorney and the prosecutor proceeded to discuss a trial date. After a brief recess, the County judge talked to both attorneys in chambers to satisfy himself that Stokes fully understood what he was doing. "THE COURT: But my point is, [Stokes] was aware of the State's recommendation. He was aware that it was a concurrent sentence of 50 years, concurrent with the sentence imposed in the City. And with that knowledge, he chose not to plead guilty? [DEFENSE COUNSEL]: Yes." *Id.* at 6.

■ Second, even assuming arguendo that the City and County plea bargains comprised one package deal,[5] "any rights

4. Although *Mabry* was not a capital case, we are unwilling to reject its precedential value on this distinction alone. *Cf. Pickens v. Lockhart*, 714 F.2d 1455, 1460 n. 4 (8th Cir.1983) (Eighth Cir-

cuit applies same ineffective assistance of counsel standards in capital and noncapital crimes).

5. The Missouri Court of Appeals found that the City and County agreements were "two separate

petitioner did have to enforce the agreement [by virtue of his City plea] were lost when he refused to perform his part of the bargain [in the County]." *Stokes*, Report & Recommendation of the United States Magistrate at 6. *See United States v. Lippert*, 740 F.2d 457, 460 (6th Cir.1984), *cert. denied*, 469 U.S. 1218, 105 S.Ct. 1200, 84 L.Ed.2d 344 (1985); *United States v. Pleasant*, 730 F.2d 657, 664 (11th Cir.), *cert. denied*, 469 U.S. 869, 105 S.Ct. 216, 83 L.Ed.2d 146 (1984). Specifically, the first half of the agreement was fully performed by both parties in the City court. The second half of the agreement could not be performed by the State until after Stokes entered his guilty plea in the County at the appointed time. When the appointed time arrived and Stokes failed to perform, the State was relieved of all obligations (and benefits) under the second half of the agreement. *See United States v. Calabrese*, 645 F.2d 1379, 1390 (10th Cir.), *cert. denied*, 451 U.S. 1018, 101 S.Ct. 3008, 69 L.Ed. 390 (1981); *United States v. Herrera*, 640 F.2d 958, 962 (9th Cir.1981). There is no duty by a prosecutor to keep a plea bargain open for any length of time. *Pleasant*, 730 F.2d at 664. The County prosecutor did not withdraw his offer in bad faith or on a whim, as Stokes suggests in his reference to *United States v. Baldacchino*, 762 F.2d 170, 179 (1st Cir.1985). Nor was the State responsible for the erroneous newspaper article or for Stokes's inability to explain his refusal to plead guilty to the capital murder charge in the County.

◼ Third, we reject Stokes's argument that the State is estopped from withdrawing the offer because his guilty pleas in the City show detrimental reliance on the State's promise of concurrent fifty year sentences on the City and County charges. Detrimental reliance is difficult to demonstrate in a plea bargain context. For example, in *United States v. Coon*, 805 F.2d 822 (8th Cir.1986), we rejected a similar argument that the defendant, who had confessed to the FBI under a plea agreement, had detrimentally relied on mistaken advice from the prosecutor about the maximum penalty that would result from his plea. Citing *Mabry*, we held: "The only change in position that can be considered 'detrimental reliance' is the actual entry of an involuntary guilty plea. Not until that point has the defendant been deprived of any constitutionally protected liberty interest." *Id.* at 825. *See also United States v. Mack*, 655 F.2d 843, 848 (8th Cir.1981) (although defendant confessed with "reasonable expectation" that judge had accepted tentative plea agreement when in fact judge had rejected it, defendant had no right to enforce original tentative agreement after he later pled guilty under different terms).

Under the *Coon* analysis, Stokes's detrimental reliance argument fails unless his guilty pleas in the City court were involuntary. This question has already been resolved against Stokes by the Missouri Court of Appeals, which affirmed the St. Louis City Court's dismissal of a separate, one-issue Rule 27.26 motion specifically attacking the voluntariness of these pleas. *See Stokes v. State*, 671 S.W.2d 822 (Mo.Ct. App.1984). Although Stokes only indirectly challenges that determination in his brief to this Court, we have reviewed this question *de novo*, as we are required to do under *Marshall v. Lonberger*, 459 U.S. 422, 431, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983), and we agree with the conclusion reached by the Rule 27.26 courts. The record simply does not indicate that Stokes's guilty pleas in the City court were involuntary, and we therefore hold that they were not involuntary. Moreover, after the County deal collapsed, Stokes could have sought to withdraw his City pleas before the County trial if he thought they were to his detriment.[6] *Cf. Coon*, 805 F.2d at 825 (defend-

---

bilateral contracts," *Stokes*, 688 S.W.2d at 22, although the City prosecutor testified that the two-part arrangement was a "package deal." *State v. Stokes*, No. 488434, [Rule 27.26 Motion] Record on Appeal from the Circuit Court of the County of St. Louis at 53 (Sept. 6–7, 1983). The

magistrate did not specifically rely on this finding, nor do we.

**6.** The City prosecutor testified (during the Rule 27.26 hearing on the County proceedings) that he would not have opposed the withdrawal of

ant not in "worse position" after making his confession based on inaccurate information from prosecutor, because he could have sought to exclude the confession from the evidence and proceed to trial as if no plea agreement had existed).

All the cases Stokes relies upon involve situations fundamentally different from the one at hand. For instance, Stokes mentions two principal cases in his Statement of Issues (*Santobello* and *State v. Burson*, 698 S.W.2d 557 (Mo.Ct.App.1985)) in which defendants won specific enforcement of plea bargains. However, in each case, the defendant already had fully performed all his obligations under the bargain, and the guilty plea already had been accepted by the judge. In effect, the ball had been in the prosecutor's court, and the prosecutor had refused to keep it in play. Stokes, on the other hand, cannot complain; the ball was in his court and, through no fault of the State, he chose not to keep it in play. In short, Stokes is asking us to extend the constitutional standard of "fair" plea bargaining beyond any precedent he can cite or we can find, at a time when the United States Supreme Court has in fact been limiting defendants' rights to enforce plea agreements. *See Ricketts v. Adamson*, — U.S. ——, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987); *United States v. Benchimol*, 471 U.S. 453, 105 S.Ct. 2103, 85 L.Ed.2d 462 (1985); *Mabry*. We refuse to stretch the limits of what is "unfair" to include circumstances that may be merely unfortunate.

For the reasons set forth above, we hold that the State, having formally withdrawn its offer concerning the County charge of capital murder once Stokes had repudiated that offer in open court, was under no obligation to renew the offer. The prosecutor's decision left Stokes free to exercise his right to trial by jury, with all of its privileges and safeguards. *See McGovern*, 822 F.2d at 746. "It is a novel argument that constitutional rights are infringed by trying the defendant rather than accepting his plea of guilty." *Weatherford*, 429 U.S. at 561, 97 S.Ct. at 846.

## II.

Stokes also asserts that his trial counsel was ineffective because he failed to raise in his motion for new trial the trial court's error in not offering a mandatory first degree (felony) murder instruction.[7] At the close of Stokes's trial, the judge instructed the jury on capital murder, second degree murder, and manslaughter. The judge gave no instruction on first degree murder—an instruction the magistrate found to be mandatory under the laws of Missouri as they stood when Stokes committed the capital murder in question. Stokes's trial attorney did not request a first degree murder instruction, did not object to its absence, and did not raise the issue in his motion for new trial. Nor did Stokes's appellate counsel raise the issue on direct appeal. Stokes raised the instructional issue for the first time in his motion for post-conviction relief under Rule 27.26, which included some forty issues. Stokes's Rule 27.26 counsel alleged, inter alia, that trial counsel had been ineffective in failing to include the instructional error in his motion for new trial. Rejecting that claim, the state circuit court denied the Rule 27.26 motion. Stokes's Rule 27.26 counsel did not advance the ineffective assistance of trial counsel claim on appeal in his three-issue brief to the Missouri Court of Appeals.

---

the City pleas if Stokes had pursued the matter before the County trial began. Tr. at 53. However, Stokes's trial attorney also testified that he made a strategic decision not to move to withdraw the City pleas because he considered that murder charge to be "much more vicious or serious than the charge in the County." *Id.* at 32. The Missouri Court of Appeals, affirming the denial of Stokes's Rule 27.26 motion on the County proceedings, held that the decision of trial counsel not to seek to withdraw Stokes's guilty pleas in the City court did not constitute ineffective assistance of counsel. *Stokes*, 688

S.W.2d at 23–24. Stokes does not raise this ineffective assistance of counsel issue in his habeas petition.

7. Stokes also contends in his brief to this Court that the trial court's failure to instruct on first degree murder violated his due process rights. As Stokes did not raise this due process claim in his habeas petition and neither the magistrate nor the District Court was given an opportunity to rule on it, we do not consider it here. *See Johanson v. Pung*, 795 F.2d 48, 49 (8th Cir.1986).

In his habeas petition, Stokes resurrects his claim that trial counsel was ineffective in not raising the instructional error in his motion for new trial. The magistrate held an evidentiary hearing on this issue. He considered testimony from both Stokes's trial counsel and his Rule 27.26 counsel before rejecting the ineffective assistance of trial counsel claim. The magistrate held—and Stokes does not seriously contest—that the failure of petitioner's Rule 27.26 counsel to advance the constitutional ineffective assistance of trial counsel claim on post-conviction appeal before the Missouri Court of Appeals created a procedural bar to federal habeas corpus review of that issue. We agree. *See Benson v. State*, 611 S.W.2d 538, 541 (Mo.Ct. App.1980) (Missouri procedure requires constitutional claim to be preserved "at each step of the judicial process"); *see also Thomas v. Auger*, 738 F.2d 936, 938–39 (8th Cir.1984); *White v. Swenson*, 261 F.Supp. 42, 59 (W.D.Mo.1966). Therefore, we may not consider the claim of ineffective assistance of trial counsel unless Stokes demonstrates both "cause" for procedural default on the Rule 27.26 appeal, and "actual prejudice" resulting from the abandonment of the claim. *See Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *see also Smith v. Murray*, 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986); *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

Petitioner may establish cause by proving that the procedural default in state court was due to ineffective assistance of counsel, under the two-pronged perform-ance and prejudice test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Carrier*, 477 U.S. at 488, 106 S.Ct. at 2645. *Strickland* requires petitioner to demonstrate both (1) "professionally unreasonable" conduct by counsel, and also (2) a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 691, 694, 104 S.Ct. at 2066, 2068. An appellate court need not consider the performance prong if petitioner fails to prove prejudice, and vice versa. *Id.* at 697, 104 S.Ct. at 2069. Stokes asserts that the decision of his Rule 27.26 counsel not to advance the ineffective assistance of trial counsel claim in his post-conviction appeal to the Missouri Court of Appeals constitutes ineffective assistance of Rule 27.26 counsel, and thus cause for his procedural default. The District Court (accepting the magistrate's recommendation) rejected this allegation, holding that the Rule 27.26 counsel was not ineffective. We affirm the District Court, because we agree that Stokes has failed to show that the performance of his Rule 27.26 counsel was "professionally unreasonable" under the first prong of *Strickland*.[8]

In examining the Rule 27.26 counsel's performance, "[t]he question is not whether [his] decision not to raise the [ineffective assistance of trial counsel] issue was correct or wise, but rather whether his decision was an unreasonable one which only an incompetent attorney would adopt." *Parton v. Wyrick*, 704 F.2d 415, 417 (8th Cir.1983). Stokes's Rule 27.26 counsel tes-

---

8. According to the State's reading of dicta from *Carrier*, 477 U.S. at 485–89, 106 S.Ct. at 2644–46, Stokes cannot use ineffective assistance of Rule 27.26 counsel to show cause for procedural default because he could not raise that claim as an independent ground for habeas relief. *See Mitchell v. Wyrick*, 727 F.2d 773, 774 (8th Cir.), *cert. denied*, 469 U.S. 823, 105 S.Ct. 100, 83 L.Ed.2d 45 (1984) (petitioner may not raise ineffective assistance of Rule 27.26 counsel as separate claim on federal habeas review because state post-conviction process is civil procedure to which sixth amendment right to effective assistance does not attach). *Accord Williams v. State*, 640 F.2d 140, 144 (8th Cir.), *cert. denied*, 451 U.S. 990, 101 S.Ct. 2328, 68 L.Ed.2d 849 (1981). The same language from *Carrier* indicates that "generally" an ineffective assistance of counsel claim should be "presented to the state courts as an independent claim before it may be used to establish cause for a procedural default," in deference to the "principle of comity that underlies the exhaustion doctrine." *Carrier*, 477 U.S. at 489, 106 S.Ct. at 2646. *See also Leggins v. Lockhart*, 822 F.2d 764, 768 n. 5 (8th Cir.1987), *cert. denied*, ___ U.S. ___, 108 S.Ct. 1080, 99 L.Ed.2d 239 (1988). Because of our holding that Stokes's Rule 27.26 counsel was not ineffective, we need not determine the applicability of these *Carrier* dicta to the unique procedural facts before us.

tified before the magistrate that he considered including in his Rule 27.26 appeal the claim that trial counsel was ineffective because he failed to raise the instructional error, but decided that it would not "justify a finding of ineffective assistance of counsel and cause the case to be reversed" by the Missouri Court of Appeals. *Stokes v. Armontrout,* No. 85–1496 C (6), Transcript of Hearing before Magistrate at 36–37 (E.D.Mo. July 14, 1986). This testimony demonstrates that the attorney deliberately, in the exercise of reasonable professional judgment,[9] winnowed out the ineffective assistance of trial counsel claim, along with thirty-six other issues, from his original motion in order to focus on the three issues he decided would be strongest on appeal. This selective process of "winnowing" and "focusing" is the "hallmark of effective appellate advocacy." *See Smith,* 477 U.S. at 536, 106 S.Ct. at 2667 (quoting *Jones v. Barnes,* 463 U.S. 745, 751–52, 103 S.Ct. 3308, 3312–13, 77 L.Ed.2d 987 (1983)).

The transcript of the hearing before the magistrate also indicates that Stokes's Rule 27.26 counsel erroneously may have believed that he was preserving the ineffective assistance of trial counsel issue for federal habeas review—either by attaching a copy of his forty-issue motion to his three-issue appellate brief, or by raising the instructional error in a "motion to recall the mandate," filed with and summarily denied by the Missouri Supreme Court. However, as the Rule 27.26 counsel specifically considered the ineffective assistance of trial counsel claim and decided in the exercise of his informed professional judgment that it would be futile to present it to the Missouri Court of Appeals, we cannot hold that his apparent confusion over preserving the claim for federal review overcomes *Strickland's* "strong presumption" of attorney competence. *See Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. Deliberate tactical decisions that result in proce-

dural bars can always be criticized with the benefit of hindsight, but rarely do they satisfy the cause standard. Indeed, even attorney ignorance or inadvertence does not constitute cause absent a showing of ineffective assistance. *See Carrier,* 477 U.S. at 485–89, 106 S.Ct. at 2644–46 (counsel's inadvertent failure to include issue on appeal to state supreme court held not to satisfy the cause requirement of *Wainwright v. Sykes*); *Williams v. Nix,* 751 F.2d 956, 960 (8th Cir.), *cert. denied,* 471 U.S. 1138, 105 S.Ct. 2681, 86 L.Ed.2d 699 (1985) (attorneys' "asserted unawareness of the applicable state rule of practice" did not amount to cause for failure to preserve claim in state court).

In sum, "counsel's failure to raise a *particular* claim on appeal is to be scrutinized under the cause and prejudice standard when that failure is treated as a procedural default by the state courts. Attorney error short of ineffective assistance of counsel does not constitute cause for a procedural default...." *Carrier,* 477 U.S. at 492, 106 S.Ct. at 2648 (emphasis in original). Having affirmed the holding of the District Court that the performance of Stokes's Rule 27.26 counsel was not "professionally unreasonable" and therefore was not ineffective, we also affirm the District Court's holding that Stokes failed to establish cause for his procedural default with respect to his claim of ineffective assistance of trial counsel.

▪ As Stokes has not established cause for his procedural default, we need not discuss prejudice under the second prong of *Sykes. See Leggins v. Lockhart,* 822 F.2d 764, 768 (8th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1080, 99 L.Ed.2d 239 (1988) (citing *Engle v. Isaac,* 456 U.S. 107, 134 n. 43, 102 S.Ct. 1558, 1575 n. 43, 71 L.Ed.2d 783 (1982)). *Carrier* allows us to reach the merits of a defaulted claim with-

---

**9.** Stokes does not cite nor can we find a single Missouri case in which a claim of ineffective assistance of counsel based on an attorney's failure to raise an instructional error has succeeded. For cases rejecting such claims, *see Hanson v. State,* 684 S.W.2d 337 (Mo.Ct.App. 1984); *Kurtz v. State,* 645 S.W.2d 7 (Mo.Ct.App.

1982). *See also Blackmon v. White,* 825 F.2d 1263 (8th Cir.1987) (affirming District Court's holding that although state trial court had erred in failing to offer mandatory manslaughter instruction, counsel was not ineffective in failing to raise the instructional error on direct appeal).

out a showing of cause and prejudice only "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Carrier,* 477 U.S. at 496, 106 S.Ct. at 2650. Amplifying this passage, the Supreme Court, in *Smith,* 477 U.S. at 538–39, 106 S.Ct. at 2668, "reject[ed] the suggestion that there is anything 'fundamentally unfair' about enforcing procedural default rules in cases devoid of any substantial claim that the alleged error undermined the accuracy of the guilt or sentencing determination."

Stokes does not present an "extraordinary case" where the application of the *Sykes* cause and prejudice standard may result in a "fundamental miscarriage of justice." *Smith,* 477 U.S. at 538, 106 S.Ct. at 2668 (quoting *Engle,* 456 U.S. at 135, 102 S.Ct. at 1576). Specifically, Stokes does not argue that he is "actually innocent," and the record amply demonstrates that he is not. In addition, the overwhelming evidence pointed to capital murder—not first degree (felony) murder.[10] *See generally* 3 C. Wright, Federal Practice & Procedure: Criminal 2d § 515 (1982) (first degree (felony) murder typically is not an included offense under capital murder, as are second degree murder and manslaughter). The Missouri legislature a decade ago realized that it was inappropriate to require first degree murder instructions to be given automatically in capital murder cases, and replaced the mandatory rule that the magistrate found applicable to Stokes's case with a permissive rule requiring first degree murder instructions only when supported by the evidence. *Compare* Mo.Rev. Stat. § 565.006(1) (1969) (repealed 1978) *with* Mo.Rev.Stat. § 556.046 (1978). *See also Hanson v. State,* 684 S.W.2d 337, 342 (Mo.Ct.App.1984) (first degree (felony) murder is "not, in the classic sense, a lesser included offense of [capital murder]"); *State v. Baker,* 636 S.W.2d 902, 905 (Mo. 1982) (en banc), *cert. denied,* 459 U.S. 1183, 103 S.Ct. 834, 74 L.Ed.2d 1027 (1983) ("examination of the elements of homicides, notably the mental states, illustrates that it is second degree murder, not first degree murder, which would sufficiently test a jury's belief of the crucial facts for a conviction of capital murder").

While we are not prepared to say that the evidence in Stokes's case would not support a felony murder conviction, we do have serious doubts that it would—just as the trial judge and the trial attorneys undoubtedly did. In fact, Stokes's trial attorney testified during the evidentiary hearing before the magistrate that he "didn't see any real evidence to support" a first degree murder instruction. Tr. at 7. Moreover, the jury considered instructions on second degree murder and manslaughter before convicting Stokes of capital murder, *see Spaziano v. Florida,* 468 U.S. 447, 455, 104 S.Ct. 3154, 3159, 82 L.Ed.2d 340 (1984) (citing *Beck v. Alabama,* 447 U.S. 625, 643, 100 S.Ct. 2382, 2392, 65 L.Ed.2d 392 (1980)), and then prescribed the death penalty only after a separate sentencing hearing. These facts destroy Stokes's argument that the absence of a first degree murder instruction was fundamentally unfair. "[F]undamental fairness is the central concern of the writ of habeas corpus...." *Strickland,* 466 U.S. at 697, 104 S.Ct. at 2070. We are satisfied that Stokes has not been denied fundamental fairness. Accordingly, we hold that consideration of Stokes's ineffective assistance of trial counsel claim is barred by procedural default.

---

**10.** Although Stokes ended up with his victim's car and pendant watch after the murder, the facts of the case do not show that the homicide occurred "in the perpetration of" a robbery. The evidence indicates that Stokes met his victim, Pamela Benda, in a St. Louis bar on Saturday night, and accompanied her home in the early morning. On Tuesday, Benda's nude body was found in her apartment, riddled with knife wounds. Stokes's fingerprints were found on several items in the apartment. About a month later, Stokes was arrested in Indiana with Benda's car. Stokes's wife, Ramona, had sold the victim's pendant watch shortly before the arrest. At first Stokes told the police that he had never heard of Benda. Finally, in the third version of his story, he told the police that he and Ramona had gone to the victim's home, taken some items, and that he had struck Benda and knocked her down before he and Ramona left. Ramona emphatically denied this story at trial. *See Stokes,* 638 S.W.2d at 717–18.

## III.

Finally, Stokes asserts that he was denied effective assistance of counsel because his trial attorney failed to prepare for or offer any mitigating evidence during the sentencing phase of the trial. During the brief sentencing trial, the State presented evidence of four statutory aggravating circumstances: (1) the defendant had a "substantial history of serious assaultive convictions," (2) he murdered for pecuniary gain, (3) the murder "involved torture or depravity," and (4) the defendant was a prison escapee at the time of the murder. *See* Mo.Rev.Stat. § 565.012. Defense counsel presented no evidence in mitigation, but in a closing statement pleaded for the jury to show mercy to Stokes. The judge instructed the jury to consider one statutory mitigating circumstance: whether Stokes had acted under extreme emotional or mental distress. After deliberating for three hours, the jury found evidence beyond a reasonable doubt of all four aggravating circumstances. The jury fixed Stokes's punishment at death, and the judge imposed the sentence.

On post-conviction appeal, Stokes presented evidence that both his parents, as well as witnesses opposed to the death penalty on religious and other grounds, would have been willing to testify on his behalf during the sentencing phase. At the Rule 27.26 hearing, trial counsel testified: "I guess I anticipated [the death phase] in a sense but I didn't prepare for it in the sense of calling witnesses or anything." "Q: Or planning to call witnesses or anything?" "A: Right. . . ." *Stokes v. State*, No. 488434, [Rule 27.26 Motion] Transcript of Record on Appeal from Circuit Court of the County of St. Louis at 28 (Sept. 6–7, 1983). The testimony of Stokes's parents at the Rule 27.26 hearing was brief. Mrs. Stokes said that although she knew her son was in jail, she was unaware of his actual crimes until she heard about the death sentence on TV. She was never in contact with her son in jail. Mrs. Stokes testified that she was the head of a twelve-child household and that she was religious. Stokes's father, a storeroom clerk and Baptist preacher, divorced Mrs. Stokes when their son was five, but stated that he had seen him regularly during his youth. When asked if he maintained a close relationship with his son, Mr. Stokes replied: "I'm not quite sure what you mean by 'close relationship.' We had a father-son relationship and I would see him on occasion." *Id.* at 135. Father visited son in prison four or five times in as many years.

The Rule 27.26 court analyzed this testimony under the familiar two-pronged performance and prejudice formula of *Strickland. See supra* at 1092. In a ruling affirmed by the Missouri Court of Appeals, and followed by the magistrate and District Court, the state circuit court held that Stokes had failed to prove either prong. We do not reach a conclusion on the performance prong of the *Strickland* analysis, because we find that Stokes has failed to prove that prejudice resulted from trial counsel's performance, regardless of its effectiveness.[11]

Under the prejudice prong of *Strickland,* the burden is on petitioner to prove the scope and weight of the evidence that his counsel failed to offer. The value of this unoffered testimony must be substantial to prove prejudice. It is not enough merely to speculate that a tearful parent on the stand might have evoked pity. *Compare Strickland,* 466 U.S. at 700, 104 S.Ct. at 2071 (no prejudice where attorney failed to offer any mitigating evidence, although fourteen friends and relatives of capital murder defendant were willing to testify that he was "generally a good person," and unoffered medical reports described defendant as "chronically frustrated and depressed because of his economic dilemma"); and *Milton v. Procunier,* 744 F.2d 1091, 1098–99 (5th Cir.1984), *cert. denied,* 471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 323 (1985) (no prejudice where attorney failed to intro-

---

11. *See Strickland,* 466 U.S. at 697, 104 S.Ct. at 2070. In affirming the District Court's finding of no prejudice, we do not necessarily affirm its conclusion that trial counsel's performance was not ineffective.

duce mitigating evidence that petitioner attended church, was known to his friends and family as a non-violent person, and had been mixed up with drugs); *with Armstrong v. Dugger,* 833 F.2d 1430, 1433–34 (11th Cir.1987) (prejudice resulted from counsel's failure to introduce mitigating evidence that defendant had grown up in poverty, with little adult supervision, worked hard as a youth and thus missed a good deal of school, was subject to epileptic seizures, was non-violent, and was involved in religious activities); and *Woodard v. Sargent,* 806 F.2d 153, 157–58 (8th Cir. 1986) (prejudice resulted from counsel's failure to request instruction based on defendant's clean police record—a statutory mitigating circumstance—where only two aggravating circumstances found).

In Stokes's case, the record of the Rule 27.26 hearing reveals that his parents' testimony would have provided virtually no mitigating evidence concerning his character or background. Testimony that Mrs. Stokes is religious or that Mr. Stokes visited his son several times in prison would have been of no value to the jury in deciding Stokes's sentence. And we cannot speculate about additional statements Stokes's parents might have made to sway the jury, because we are tied to the record. *See Burger v. Kemp,* — U.S. —, 107 S.Ct. 3114, 3125, 97 L.Ed.2d 638 (1987). The unoffered mitigating evidence in this case is of little import in comparison to the significant unoffered mitigating evidence in *Armstrong* and *Woodard;* it tells us far less about the defendant than even the unoffered testimony in *Strickland* and *Milton,* which was rejected as insubstantial. In light of the overwhelming aggravating circumstances against Stokes, *see, e.g., Strickland,* 466 U.S. at 700, 104 S.Ct. at 2071, we hold that counsel's failure to elicit testimony from Mr. and Mrs. Stokes did not, with "reasonable probability," *see id.* at 694, 104 S.Ct. at 2068, prejudice petitioner.

Finally, we reject Stokes's assertion that he was prejudiced by counsel's failure to offer testimony that the death penalty flouts the Bible and fails as a de-

terrent. Missouri courts have held that such generalized testimony is irrelevant, *see, e.g., State v. Gilmore,* 681 S.W.2d 934, 941 (Mo.1984) (en banc), and we agree. Such evidence might commend itself to a legislative body considering adoption or retention of the death penalty, but it has no bearing on the question whether a particular defendant who has been found guilty of capital murder should receive death or some lesser authorized penalty. Accordingly, Stokes was not prejudiced by his attorney's failure to offer this kind of testimony at his sentencing hearing.

## IV.

We have carefully considered the other seven grounds raised by Stokes, and find them to be without merit. The judgment of the District Court is affirmed.