# In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 02-4262

DONALD RAY WALLACE, JR.,

*Petitioner-Appellant,*

v.

CECIL DAVIS,

*Respondent-Appellee.*

_____

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 95-0215-C-B/S—**Sarah Evans Barker**, *Judge.*

_____

ARGUED OCTOBER 22, 2003—DECIDED MARCH 26, 2004

_____

Before FLAUM, *Chief Judge,* and EASTERBROOK and
WILLIAMS, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Donald Wallace killed an
entire family in cold blood. He broke into a house to commit
a burglary and found the occupants at home. He tied up the
parents and shot each in the head to prevent them from
identifying him. Then he shot both children to stop them
from crying. This crime, the culmination of a long criminal
career, led to a death sentence. The Supreme Court of
Indiana affirmed, 486 N.E.2d 445 (1985), and rejected
Wallace's bids for collateral relief. 553 N.E.2d 456 (1990);
640 N.E.2d 374 (1994). Wallace filed his federal petition for
a writ of habeas corpus before enactment of the

Antiterrorism and Effective Death Penalty Act of 1996, which therefore does not apply. See *Lindh v. Murphy*, 521 U.S. 320 (1997). The district court denied Wallace's petition. 2002 U.S. Dist. LEXIS 22353 (S.D. Ind. Nov. 14, 2002).

Capital punishment may be imposed in Indiana only if one or more aggravating factors exists. Whether such a factor has been established beyond a reasonable doubt is for the jury—this is true as a matter of both state law and constitutional command, see *Ring v. Arizona*, 536 U.S. 584 (2002)—but once it finds aggravating circumstances and makes a recommendation about the appropriate punishment the ultimate decision is in the judge's hands. See *Schiro v. Farley*, 510 U.S. 222 (1994) (describing Indiana's system and rejecting constitutional challenges to its operation). The jury found that Wallace had committed murder with aggravating circumstances and recommended capital punishment. The judge imposed that sentence after agreeing with the jury that two aggravating factors (murder during the course of another felony, and multiple murders) and no mitigating factors had been established. In the course of evaluating the appropriate penalty, the judge mentioned many additional facts: that Wallace had committed the murders while on parole, that he displayed a total disregard of human life, that there was "no provocation whatsoever" for his acts, and that he "had a long history of serious criminal conduct." The judge listed 14 offenses for which Wallace had been arrested or convicted.

After the judge sentenced Wallace to death, two of these 14 were set aside on the ground that, when taking Wallace's guilty pleas, the judge had not informed him of all rights being waived in the process. Wallace had completed his sentences for those offenses, so there was no occasion to determine whether valid convictions could have been obtained. The vacatur sets up Wallace's principal argument: that by relying on "invalid non-statutory aggravating factors" the sentencing judge violated the due process

clause of the fourteenth amendment. The "invalid" component of this phrase reflects the fact that the convictions were annulled, see *Johnson v. Mississippi*, 486 U.S. 578 (1988), though whether Wallace committed and could have been convicted of those crimes remains an open question. The "non-statutory" component of the phrase reflects the fact that prior convictions are not statutory aggravating factors in Indiana. The gist of the argument is that it is bad (if not always forbidden) for a judge to rely on extra-statutory factors, and, if this is to be done at all, reliance must be placed on true rather than false considerations.

The district court responded that, even if the convictions are assimilated to aggravating factors and vitiated in conformity with *Johnson*, there remain two uncontested aggravating factors: murder in the course of burglary, and multiple murders. These support the sentence and make it unnecessary for the state judiciary either to hold a fresh sentencing proceeding or to consider expressly whether reliance on the vacated prior convictions was harmless. The district court relied on *Zant v. Stephens*, 462 U.S. 862 (1983), and Wallace contends that this was a mistake: although *Zant* holds that use of an improper aggravating factor may be harmless, Wallace insists that only the state judiciary may evaluate the error's consequences, because only the state judiciary is empowered to weigh the evidence. See *Sochor v. Florida*, 504 U.S. 527 (1992); *Clemons v. Mississippi*, 494 U.S 738 (1990). This supposes, however, that the state court itself initially weighed an invalid aggravating factor against some proper mitigating factors. When this occurs, reweighing is a job for the state. It is not what occurred here. The state judge did not find any mitigating factor to be weighed against the aggravating factors; there is no re-weighing to do.

This is why the district judge deemed the matter one of harmless error and looked to *Zant* rather than *Sochor* and *Clemons*. And if the right question is whether any error

was harmless, the answer must be yes. When an improper aggravating factor is entangled in some way with the others—if, for example, improperly excluded evidence would bear on multiple factors—then it is improper for a federal judge to evaluate the error because it is impossible to tell whether, but for the error, the defendant would be eligible. But if the factors are independent, then one error may be isolated without affecting the validity of the sentence. "*Zant* was . . . predicated on the fact that even after elimination of the invalid aggravator, the death sentence rested on firm ground. Two unimpeachable aggravating factors remained and there was no claim that inadmissible evidence was before the jury during its sentencing deliberations or that the defendant had been precluded from adducing relevant mitigating evidence." *Tuggle v. Netherland*, 516 U.S. 10, 13 (1995). One may say the same here. Two unimpeachable aggravating factors support the sentence, and neither factor was affected in any way by the judge's belief that Wallace had committed a particular number of additional offenses earlier in his criminal career.

Wallace's case is easier to resolve than either *Zant* or *Tuggle*, because his favorite phrase "invalid non-statutory aggravating factor"—language that the Supreme Court has never used except when quoting from another court's decision, see *Jones v. United States*, 527 U.S. 373, 402-03 (1999)—glosses over the fact that, in Indiana, prior criminality is not an aggravating factor in the first place. Indiana distinguishes between aggravating factors, at least one of which is essential to establish *eligibility* for capital punishment, and other considerations that may influence the exercise of discretion once eligibility has been established. Only statutory aggravating factors matter to the eligibility decision. After *Ring*, the distinction between facts that determine eligibility and those that influence the exercise of discretion is constitutionally based: the former decision must be made by the trier of fact under the rea-

sonable-doubt standard, while the latter decision may be entrusted to a judge on the preponderance standard, and with relaxed rules of evidence.

The problem in cases such as *Johnson, Zant*, and *Tuggle* arose because an accused was declared eligible for capital punishment on grounds that may have been erroneous, and it became essential to know whether, with the invalid ground sheared off, the accused still would be eligible. If several grounds of eligibility are related, it is hard to answer that question and sensible to insist that the state deal with the matter in the first instance. In this case, by contrast, Wallace's prior crimes played *no* role in the eligibility decision, so there is no puzzle to solve. The jury, which found two aggravating factors, never learned about Wallace's criminal history. And the judge, who did know about Wallace's past, distinguished between aggravating factors and other considerations.

The judge's oral explanation of his sentence finds that two aggravating factors (murder during burglary, and multiple murders) have been established beyond a reasonable doubt, and that no mitigating factors are present. The judge did not mention Wallace's criminal history. The written explanation for the sentence does mention criminal history but clearly separates this from the aggravating factors. The judge made thirteen numbered findings. Five are pertinent, and we reproduce them:

2. The aggravating circumstances alleged were:

A. That the Defendant committed the murder of each victim by intentionally killing the victims while committing or attempting to commit Burglary. (I.C. 35-50-2-9(b)(1)). [The statutory references in the sentencing judge's findings are to the 1979 version of Indiana's Code, which was in effect at the time of his murders.]

B. That the Defendant committed three other murders, regardless of whether or not the

Defendant had been convicted of the other murders, in three instances in each count. (I.C. 35-50-2-9(b)(8)).

. . .

8.  The Court finds that the State has proved beyond a reasonable doubt that two aggravating circumstances exist that warrant the imposition of the death penalty:

A.  That the Defendant, Donald Ray Wallace, Jr., murdered Patrick Gilligan, Theresa Gilligan, Lisa Gilligan and Gregory Gilligan while committing the crime of Burglary on the 14th day of January, 1980, in Vanderburgh County, State of Indiana. (I.C. 35-50-2-9(b)(1)).

B.  That the Defendant, Donald Ray Wallace, Jr., murdered Patrick Gilligan, and then murdered Theresa Gilligan, Lisa Gilligan and Gregory Gilligan; that the Defendant, Donald Ray Wallace, Jr., murdered, in order, after the murder of Patrick Gilligan, Theresa Gilligan, Lisa Gilligan and Gregory Gilligan. (I.C. 35-50-2-9(b)(8)).

. . .

10. That the aggravating circumstances set forth in paragraph eight above outweigh any mitigating circumstances offered under I.C. 35-50-2-9(c)(7).

11. The Court has considered the Jury's recommendation to impose the death penalty, and bases the sentence here given on the same standard as required of the Jury, that being that:

   A.  The State has presented beyond a reasonable doubt that two of the aggravating circumstances exist with the murders of Patrick Gilligan, Theresa Gilligan, Lisa Gilligan and Gregory Gilligan within I.C. 35-50-2-9(b)(1), and I.C. 35-50-2-9(b)(8) all as set forth in paragraph eight; and

   B.  That any mitigating circumstances that exist within I.C. 35-50-2-9(c)(7) are outweighed by the aggravating circumstances;

12. In addition to the requirements of I.C. 35-50-2-9, this Court further finds:

   A.  That Donald Ray Wallace, Jr. has recently violated the conditions of parole [by killing the Gilligan family while on parole from a prior sentence] . . . .

   B.  That Donald Ray Wallace, Jr. had a long history of serious criminal conduct [list with 26 entries follows].

It is hard to see how the judge could have been clearer. Two aggravating factors were charged, and both were found. Neither factor is problematic. There were no "non- statutory aggravating factors." Although Wallace's criminal history is not a statutory (or any other kind of) "aggravating factor," this does not foreclose all mention of it, for what it may be worth, any more than the judge is forbidden to notice that Wallace committed the murders while on parole or that Wallace was an armed career criminal. To anathematize such considerations would not stop judges from thinking about them; it would just drive them underground, which would benefit no one.

Indeed, because the list of arrests and convictions was unrelated to any aggravating factor, the state court did not commit an error, harmless or otherwise. Once a state has

determined in a fault-free manner that a given person is eligible for capital punishment—a good description of the eligibility decision for Wallace—the sentencing court is free to consider all other circumstances. *Graham v. Collins*, 506 U.S. 461 (1993); *Eddins v. Oklahoma*, 455 U.S. 104 (1982); *Lockett v. Ohio*, 438 U.S. 586 (1978). Here the state judge lumped Wallace's arrests with his convictions, not distinguishing between the two (or between juvenile and adult adjudications). The gist was that Wallace is incorrigible. Moving a given event from the "conviction" column to the "arrest without definitive adjudication" column—the best way to understand what happened when Wallace's guilty pleas were deemed procedurally defective—does not undermine the point made in ¶12(B) of the state judge's opinion. In non-capital cases there is no need to redo the sentencing every time a prior conviction that was taken into account later is challenged or annulled. See *Daniels v. United States*, 532 U.S. 374 (2001); *Custis v. United States*, 511 U.S. 485, 487 (1994). (There is an exception for convictions obtained without the opportunity to have the assistance of counsel; Wallace does not contend that he lacked counsel when entering the pleas that later were vacated.) Nothing in *Johnson*, *Sochor*, or any other decision of the Supreme Court suggests that things are otherwise in capital prosecutions. The eighth amendment requires special protections, and assurance of regularity, when making the decision that the accused is eligible for capital punishment; none of these decisions applies the same scrutiny to every sentence of a state court's decision, even when the subject is something other than eligibility. If *Johnson* and *Sochor* are to be extended beyond the ascertainment of those aggravating factors that establish eligibility, that must be done by the Supreme Court on direct appeal; given *Teague v. Lane*, 489 U.S. 288 (1989), a federal appellate court cannot elaborate on doctrine in this fashion in a collateral attack.

Thus we arrive at what seems to be the inevitable argument in capital cases: that counsel at sentencing was ineffective. The charge is that Wallace's lawyer did not put on much mitigating evidence: one uncle and two clerics. They did not persuade either the jury or the judge, who wrote that "no evidence whatsoever was presented to show the existence of any mitigating circumstances which could be considered under I.C. 35-50-2-9(c) (1 through 6); excellent religio-ethical arguments and philosophical discussions of both Hebrew and Christian history and philosophy were heard and considered within I.C. 35-50-2-9(c)(7)". Subsection (c)(7) as it stood in 1979 allowed the jury and judge to consider any mitigating circumstance not otherwise listed. (Today this is found in I.C. 35-50-2-9(c)(8).) The strategy did not work; in ¶10 (already reproduced) the judge found that the aggravating factors outweighed the considerations allowed by subsection (c)(7). Relying on *Wiggins v. Smith*, 123 S. Ct. 2527 (2003), and *Hall v. Washington*, 106 F.3d 742 (7th Cir. 1997), Wallace's current lawyers contend that, instead of stopping with theology and a few personal details offered through the uncle, counsel should have tried to create some sympathy through evidence about Wallace's unhappy upbringing and childhood—including the possibility that Wallace suffered from some form of mental illness, though not enough to support an insanity defense or demonstrate incompetence to stand trial.

Current counsel's argument supposes, however, that it was possible to offer sympathy-creating evidence consistent with both the facts and the attorney's ethical duties. As the district judge found, however, neither was true. The lawyers who represented Wallace at sentencing testified in state post-trial proceedings that they investigated many potential witnesses who might have testified about Wallace's background and mental state and could not find any, other than the uncle, who would do more good than harm. Wallace's friends and relations, counsel believed, would not be

helpful. Counsel thought "that the witnesses who could testify to Wallace's past, character or family would not be able to withstand cross-examination without losing ground for the defense. Trial counsel further testified that Wallace was not cooperative in the gathering of this information and did not want certain family members to testify at his trial. The only family member whom counsel asked to testify at the sentencing hearing was Wallace's uncle, because 'I think he comes across as objective and would have not made any absurd statements . . .'". (2002 U.S. Dist. LEXIS 22353 at *95). One drawback, for example, is that Wallace had bragged in prison about faking psychological problems. This evidence came out during a hearing held to inquire whether Wallace was competent to stand trial. The state judge concluded that Wallace had been faking and was competent. Any effort to present mental-health evidence at sentencing would have allowed this into the record in response, undermining Wallace's chances. Other lines of evidence would have brought Wallace's extensive criminal record to the jury's attention. "When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect." *Yarborough v. Gentry*, 124 S. Ct. 1, 5 (2003). Current counsel now try to overcome that presumption by contending that yet other potential witnesses could have been contacted and evaluated, but evidence to this effect was not presented at the hearing held in the state post-conviction proceedings, and there is no persuasive reason why it was withheld. One evidentiary hearing is the norm; the state did not hamper Wallace's ability to develop his factual position in the collateral litigation.

The absence of any additional evidence—not only at sentencing but also during the post-conviction proceedings—must be laid at Wallace's doorstep, and here is the source of counsel's ethical problem. During the state post-conviction proceedings, Wallace testified that the paucity of

evidence was his own preference. He told the state judge that counsel "did in fact approach me and try to develop all these sources that they are prepared to present and uh—which at that time I forbid him to do that. He repeatedly asked me to do that, I repeatedly forbidden it. Finally he acceded to my wishes." Wallace had been examined and found to be competent to stand trial, which means that he also was allowed, if he insisted, to make major decisions about his defense. See *Godinez v. Moran*, 509 U.S. 389 (1993). If counsel had presented evidence against the client's instructions, then there *would* have been a solid ineffective-assistance argument. By respecting Wallace's wishes, counsel not only abided by ethical requirements (lawyers are *agents*, after all) but also furnished the quality of assistance that the Constitution demands. As *Faretta v. California*, 422 U.S. 806 (1975), holds, the accused's will prevails because the constitutional right is to legal *assistance*; "assistance" differs from an entitlement (let alone an obligation) to override a client's instructions. Many decisions during trial fall to counsel by default or by virtue of superior knowledge, but the major ones—such as whether to testify or present a defense—may be exercised personally, if the accused wants to make rather than delegate these vital choices.

A good lawyer tries to persuade the accused to make a wise decision about testifying (or keeping silent) at trial, and about presenting a defense, even though the ultimate decision rests with the client, and wretched advice that leads the accused to make a bad decision is a form of ineffective assistance. The accused is entitled to the information essential to make an educated choice. This is the holding of *Douglas v. Woodford*, 316 F.3d 1079 (9th Cir. 2003), which concluded that an accused's vocal opposition to presenting a defense cannot by itself vindicate counsel's inadequate efforts to find whether there was a defense to be made. In *Douglas* the lawyer skimped on investigation, so

the client lacked information needed to make decisions. Here, by contrast, counsel testified that they did investigate and came up only with the uncle (plus the rabbi and minister who offered judge and jury moral grounds to spare Wallace's life) as a believable witness who would provide net benefits for the defense. Wallace thus could and did make an informed decision; and if the decision to forbid counsel to proceed was unwise, he must accept the consequences. Certainly no opinion of the Supreme Court establishes that counsel is obliged to override the client's instructions; once again, given *Teague*, any such novel rule must be established on direct appeal rather than collateral review.

AFFIRMED

WILLIAMS, *Circuit Judge*, concurring. Though I agree with the ultimate decision in this case, I must disagree with the majority's statement that the logic of *Johnson v. Mississippi*, 486 U.S. 578 (1988) and *Sochor v. Florida*, 504 U.S. 527 (1992) are limited to "those aggravating factors that establish [death] *eligibility*. . . ." Majority opinion at 8 (emphasis added).[1]

---

[1] Weighing states, such as Indiana, conduct a two-part analysis when determining whether to apply the death penalty. In the first phase, the jury is asked to determine whether the defendant is "death eligible." This inquiry asks whether the jury has found any statutory aggravating factors to exist beyond a reasonable doubt. In the second phase, the jury is asked to weigh all mitigating factors against all aggravating factors and decide whether to

(continued...)

I stand by the majority's conclusion because Wallace failed to prove that the sentencer, here the trial judge, actually considered the invalid nonstatutory aggravators in his decision to impose death. This court has held that "*Sochor* and *Clemons* [. . .] stand for the proposition that, when an 'invalid' aggravating factor is considered in sentencing in a 'weighing' state, a state appellate court must either reweigh the aggravating circumstances against the mitigating circumstances, engage in a meaningful harmless error analysis, or remand for resentencing." *Hough v. Anderson*, 272 F.3d 878, 906 (7th Cir. 2001). This step allows any potential error to be cured by the state court. However, we also reasoned that the defendant must first present sufficient evidence that the invalid aggravating factor was considered by the sentencer. *Id.* The trial judge's written sentencing memorandum articulates his bifurcated consideration of the nonstatutory and subsequently invalid aggravating factors.[2] Thus, Wallace has not satisfied his

---

(...continued)

recommend the imposition of death. The trial judge, however, decides whether to accept or reject the jury's recommendation for death.

[2]  The dearth of mitigating evidence also raises several questions concerning the propriety of Wallace's attorney's sentencing trial strategy. Counsel called Joseph Kline, a rabbi, and Lowell G. Bishop, a Lutheran pastor, to the stand. Both men testified as to their theological understanding of the propriety of the death penalty. Rabbi Kline discussed the Jewish faith's disapproval of the death penalty and stated that the real meaning of "an eye for an eye" was that a victim should be monetarily compensated for a murder. Pastor Bishop discussed his personal disapproval of the death penalty based on his interpretation of Scripture. This court has suggested that mitigation strategies which seek the "equivalent of jury nullification" on the basis of religious beliefs are unreasonable. See *Hall v. Washington*, 106 F.3d 742, 750 (7th Cir.

(continued...)

burden. *See id.* (reasoning that an appellate court need not reweigh aggravating and mitigating factors when the defendant has failed to prove that the sentencer actually considered the invalid factors).

I write separately to discuss the majority's decision to limit the applicability of *Johnson* and *Sochor* to the death eligibility determination. The propriety of Wallace's death eligibility is not at issue here, nor was eligibility at issue in *Johnson*[3] or *Sochor*.[4] Rather, the potential constitutional

---

(...continued)

1997) ("Claims that the Bible or a particular religion opposes the death penalty 'have no bearing on the question of whether a particular defendant who has been found guilty of capital murder should receive death or some lesser authorized penalty.' ") (quoting *Stokes v. Armontrout*, 851 F.2d 1085, 1096 (8th Cir. 1988)).

However, the record reveals that Wallace's attorney did investigate his background. *See Wiggins v. Smith*, 123 S. Ct. 2527, 2536 (2003) ("[W]e focus on whether the investigation supporting counsel's decision not to introduce mitigating evidence of [the defendant's] background *was itself reasonable.*") (emphasis in original). The record is also replete with examples of Wallace impeding his attorney's mitigation investigation, which makes counsel's decisions seem more reasonable in light of the circumstances.

[3] "At the conclusion of the sentencing hearing, the jury found three aggravating circumstances, any one of which, as a matter of Mississippi law, would have been sufficient to support a capital sentence." 486 U.S. at 580-81. The jury in *Johnson* was asked to weigh "mitigating circumstances and aggravating circumstances 'one against the other,' " and ultimately "found 'that the aggravating circumstances do outweigh the mitigating circumstances and that the Defendant should suffer the penalty of death.' " *Id.* at 581. Thus, the issue there was the propriety of the final decision to impose death, not death "eligibility."

[4] The *Sochor* Court stated, "[i]n a weighing State like Florida, there is Eighth Amendment error when the sentencer weighs an

(continued...)

infirmity arises from the fact that Indiana is a "weighing" state coupled with the possibility that during the second phase of Wallace's sentencing, the trial judge may have considered two aggravating factors later deemed invalid.

To satisfy the edicts of the Eighth Amendment, the imposition of the ultimate punishment must be "reliable." Reliability is gauged by: (1) the degree to which the state properly narrows the class of defendants eligible for the death penalty, *see Gregg v. Georgia*, 428 U.S. 153, 189 (1976); (2) the proportionality of the sentence imposed to the crime committed, *see Furman v. Georgia*, 408 U.S. 257 (1972); and (3) the extent to which the defendant received an individualized sentencing determination, *see Eddings v. Oklahoma*, 455 U.S. 104, 110-12 (1982). An invalid aggravating factor may affect the eligibility determination; however, in a weighing state, because the sentencer is asked to reweigh all mitigating evidence against all aggravating evidence, the invalid aggravator may also have a profound effect on the sentencer's ultimate decision of whether to sentence the defendant to life in prison or sentence him to death.[5] *See Stringer v. Black*, 503 U.S. 222,

---

(...continued)

'invalid' aggravating circumstance in reaching the ultimate decision to impose a death sentence." 504 U.S. at 532 (quoting *Clemons v. Mississippi*, 494 U.S. 738, 752 (1990)). Therefore, once again, death eligibility was not at issue.

[5] The Indiana Supreme Court has subsequently disallowed the consideration of nonstatutory aggravating factors during the second phase of the death determination, though not required by the federal constitution. *See Zant v. Stephens*, 462 U.S. 862, 878 (1983). However, as Wallace's appeal began before 1995, and the Indiana Supreme Court has decided not to apply this new ruling retroactively, it does not apply to his case. *See Bivins v. State of Indiana*, 642 N.E.2d 928, 953-56 (Ind. 1995) ("court must *hence-*

(continued...)

230 (1992) (noting that the Eighth Amendment does not permit a "state appellate court in a weighing State to affirm a death sentence without a thorough analysis of the role an invalid aggravating factor played in the sentencing process"). The Court's analysis must extend to the entire sentencing process. *See Tuggle v. Netherland*, 516 U.S. 10, 11 (1995) (noting that in weighing states a death sentence may not be summarily affirmed on the basis of one valid aggravating factor once another aggravating factor is deemed invalid). Limiting *Johnson* and *Sochor* is therefore contrary to the Court's reasoning.

A true Copy:

      Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

---

(...continued)
*forth* limit aggravating circumstances eligible for consideration to those specified in the death penalty statute, Indiana Code Section 35-50-2-9(b)") (emphasis added).

---