# In the
# Indiana Supreme Court

| | | |
|---|---|---|
| Alan MATHENEY, | ) | Supreme Court Cause No. |
| Petitioner, | ) | 45S00-0506-SD-271 |
| v. | ) | |
| | ) | Lake Superior Court, Crim. Div. 2 |
| STATE of Indiana, | ) | Case No. 45G02-9001-CF-22 |
| Respondent. | ) | |

## PUBLISHED ORDER CONCERNING SUCCESSIVE PETITION
## FOR POST-CONVICTION RELIEF IN CAPITAL CASE

### Introduction

After having completed the review to which he is entitled as a matter of right, petitioner Alan Matheney remains convicted of murder and sentenced to death. Matheney now requests permission to litigate additional claims, arguing that the death sentence is unconstitutional because he had a mental illness when he committed the murder. Because we conclude Matheney has not shown a reasonable possibility he is entitled to relief, we deny his request.

### Background

In 1989, Matheney was an inmate in an Indiana prison, having been convicted of two felonies for taking his children out of the state in violation of a court order and battering his ex-wife, Lisa Bianco. On March 4, 1989, Matheney received an eight-hour pass from the prison authorizing him to travel to Indianapolis. Instead, Matheney headed north to St. Joseph County, where Bianco lived. Matheney took an unloaded shotgun from a friend's house, drove to Bianco's house in Mishawaka, parked a few houses away and walked to her backyard. He then broke in through the back door. Bianco told her children to call a neighbor for help, then Bianco ran outside with Matheney in pursuit. When Matheney caught up with Bianco, he beat her with the shotgun with such force that the gun broke. Bianco died as a result of severe blunt trauma to the head. Matheney surrendered to police later that afternoon.

Matheney was charged with one count of intentional murder and one count of burglary. *See* Ind. Code § 35-42-1-1(1) (murder); I.C. § 35-43-2-1 (burglary). The State sought the death penalty, alleging two aggravating circumstances that rendered Matheney eligible for a death sentence: (1) an intentional murder during a burglary and (2) he committed the murder by lying in wait. *See* I.C. § 35-50-2-9(b)(1) & 9(b)(3).

At trial, Matheney asserted he was legally insane, and was examined by various mental health professionals. None testified that he had been legally insane when he murdered Bianco, but one testified that he suffered from the mental disease of paranoid personality disorder and another diagnosed him with schizophreniform disorder. There was evidence he was under the delusion that Bianco, the St. Joseph County prosecutor, and others were part of an organized, systematic conspiracy designed to persecute him and keep him in prison. Several people testified about his odd behaviors.

The jury, however, rejected the options of finding Matheney not guilty by reason of insanity or guilty but mentally ill. *See* I.C. § 35-41-3-6(a) ("A person is not responsible for having engaged in prohibited conduct if, as a result of mental disease or defect, he was unable to appreciate the wrongfulness of the conduct at the time of the offense."); I.C. § 35-36-1-1 ("'Mentally ill' means having a psychiatric disorder which substantially disturbs a person's thinking, feeling, or behavior and impairs the person's ability to function . . . ."). Instead, the jury found him guilty as charged on both counts.

The jury unanimously recommended the death sentence, therefore necessarily deciding that the aggravating circumstances outweighed any mitigating circumstances, including those relating to Matheney's mental health. *See* I.C. § 35-50-2-9(c)(2) & (c)(6) (allowing a jury to find as mitigating circumstances that Matheney "was under the influence of extreme mental or emotional disturbance when the murder was committed," or that his "capacity to appreciate the criminality of [his] conduct or to conform that conduct to the requirements of law was substantially impaired as a result of mental disease or defect"); I.C. § 35-50-2-9(e) (providing that a jury may recommend the death penalty only if it finds the state has proved the aggravating circumstance beyond a reasonable doubt and that any mitigating circumstances are outweighed by the aggravating circumstances). The Lake Superior Court followed the jury's recommendation and sentenced Matheney to death.

The convictions and sentences were affirmed at each stage of subsequent review. We affirmed the death sentence on direct appeal in Matheney v. State, 583 N.E.2d 1202 (Ind. 1992), *cert. denied*, 504 U.S. 962 (1992). Matheney then sought post-conviction relief in state court, but the trial court denied his petition and we affirmed in Matheney v. State, 688 N.E.2d 883 (Ind. 1997), *reh'g denied* (1998), *cert. denied*, 525 U.S. 1148 (1999). Matheney then sought relief in federal courts. The United States District Court for the Northern District of Indiana denied Matheney's petition for a writ of habeas corpus in Matheny v. Anderson, 60 F. Supp. 2d 846 (N.D. Ind. 1999). On appeal in Matheney v. Anderson, 253 F.3d 1025 (7th Cir. 2001), *cert. denied*, 535 U.S. 1030 (2002), the United States Court of Appeals for the Seventh Circuit affirmed in part and remanded for a determination of whether Matheney had been competent to stand trial. On remand, the district court found Matheney had been competent to stand trial, and again denied him relief from the convictions and death sentence in Matheney v. Anderson, No. 3:98-cv-183AS (N.D. Ind. Feb. 18, 2003) (unpublished order). The Seventh Circuit affirmed that determination in Matheney v. Anderson, 377 F.3d 740 (7th Cir. 2004), *reh'g* and *reh'g en banc denied* (2004), *cert. denied sub nom.*, Matheney v. Davis, 544 U.S. ___, 125 S.Ct. 2252 (May 16, 2005).

Matheney has thus received the review of the convictions and death sentence to which he is entitled as a matter of right. We have jurisdiction because he is sentenced to death. *See* Ind. Appellate Rule 4(A)(1)(a).

**Indiana's Post-Conviction Rule**

As just indicated, Matheney has already availed himself of our rule that permits a person convicted of a crime in an Indiana state court one collateral review of a conviction and sentence in a post-conviction proceeding. *See* Ind. Post-Conviction Rule 1.

To litigate another or "successive" post-conviction claim, he needs our permission. We will authorize such a proceeding to go forward only "if the petitioner establishes a reasonable possibility that the petitioner is entitled to post-conviction relief." P-C.R. 1 § 12(b). In deciding

whether Matheney has made the required showing, we consider the applicable law, the petition, materials from his prior appeals and post-conviction proceedings including the record, briefs and court decisions, and any other material we deem relevant. *See id.*

By counsel, Matheney has filed a "Tender of Successive Petition For Post-Conviction Relief," and has tendered a successive "Petition For Post-Conviction Relief." The State filed its "State's Response in Opposition to Tender of Successive Petition For Post-Conviction Relief," and Matheney was allowed to file a "Reply to State's Opposition to Tender of Successive Petition For Post-Conviction Relief."[1]

## The Claims

Matheney claims he should be exempt from the death penalty because he was mentally ill when he committed the murder. Specifically, he claims that imposition of the death penalty is prohibited by our state's constitution and violates his right to equal protection under the federal constitution. *See* Pet. for Post-Conviction Relief (hereafter "Successive Pet.") at 2, ¶ 8(A) & (B); Tender of Successive Pet. For Post-Conviction Relief (hereafter "Tender") at 2, ¶ 5. We conclude Matheney has not met his burden of showing a reasonable possibility of relief.

**1. Matheney has not shown he is entitled to relief under state law.** Matheney asserts that a death sentence for a person who was mentally ill when committing murder now violates article I, section 16 of the Indiana Constitution, which states, in part, that "[c]ruel and unusual punishments shall not be inflicted" and "[a]ll penalties shall be proportioned to the nature of the offense." *See* Successive Pet. at ¶ 8(A).

Indiana's death penalty scheme takes into account a person's mental health, as Matheney's case demonstrates. In the guilt phase of the trial, the jury had the option of finding Matheney not guilty by reason of insanity or guilty but mentally ill. In the penalty phase, the jury had the option of finding that the mitigating circumstances, including any relating to his mental health, outweighed the aggravating circumstances. *See* I.C. § 35-50-2-9(c) & (e) (1988). The sentencing court considered the evidence of Matheney's mental health in sentencing Matheney to death. This Court considered the evidence of his mental status on direct appeal, *see* Matheney v. State, 583 N.E.2d at 1209, and again in the first post-conviction appeal, *see* Matheney v. State, 688 N.E.2d at 910. We noted the evidence that Matheney suffered from a mental disease, which caused him to view life through a distorted and deluded version of reality, but found little evidence tending to show that his mental status left him no choice but to kill Bianco:

> While it may have caused him to believe that Bianco and others were conspiring to keep him incarcerated and deprive him of his rights, we are still left with the question of why that belief would necessarily drive Matheney to kill Bianco instead of simply sticking to legal, lawful avenues of exposing this perceived unlawful conspiracy. While hate, jealousy and vengeance may be motivations which are undesirable and often lead people to do things they otherwise would not do, we do not consider people who act upon these motivations to be "mentally ill" or unable to "conform their conduct to the requirements of the law," per se.

---

[1] Various documents have also been submitted by Matheney *pro se.* These documents have been received by our Clerk, but have not been filed because, among other things, Matheney is represented by counsel.

3

*Id.* We also noted the evidence that Matheney is intelligent and manipulative, and that the circumstances of the murder—the manner in which he prepared to kill Bianco, the way he approached her house and carried out the plan—indicated that he was not extremely mentally and emotionally disturbed at the time of the murder. *Id.*

We have previously rejected the claim that a death sentence for a person who is mentally ill is *per se* unconstitutional. Harris v. State, 499 N.E.2d 723, 727 (Ind. 1986). Matheney acknowledges this precedent, but asserts that evolving standards of decency, changes in the legal landscape, and an emerging consensus in Indiana since his earlier state-court proceedings are such that sentencing to death a person with a mental illness now constitutes cruel and unusual punishment. He cites a more recent decision of ours that notes no defendant since Harris who has been found guilty but mentally ill has been sentenced to death. *See* Prowell v. State, 741 N.E.2d 704, 718 n.8 (Ind. 2001). But Prowell does not particularly assist Matheney because the jury rejected the option of finding him guilty but mentally ill. We have affirmed death sentences for other defendants with mental illnesses since Prowell was decided. *See, e.g.,* Corcoran v. State, 774 N.E.2d 495 (Ind. 2002) (affirming death sentence on direct appeal for quadruple killing by defendant diagnosed with schizotypal personality disorder; rejecting argument that death sentence was manifestly unreasonable). We have recently rejected a claim like Matheney's in another successive post-conviction case. *See* Baird v. State, ___ N.E.2d ___, 2005 WL 1684163 (Ind. Jul. 19, 2005). As in Baird, we decline to decide that developments since Harris render the death penalty unconstitutional for Matheney.

**2. Matheney has not shown he is entitled to relief under federal law.** Matheney's second claim is that death sentences for mentally ill persons violate their right to equal protection under the United States Constitution's Fourteenth Amendment. *See* Succ. Pet. at ¶ 8(B).

In Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242 (2002), the United State Supreme Court held that execution of mentally retarded persons is unconstitutional. Atkins notes that the limitations of mentally retarded persons (including cognitive limitations and a diminished capacity for logical reasoning, controlling impulses, and understanding the reaction of others), make them less culpable. 536 U.S. at 318. Atkins also says that excluding mentally retarded persons from the death penalty is justified in part because the death penalty does not measurably contribute to either of the accepted goals of punishment—retribution or deterrence. *Id.* at 319-20. Matheney asks us to decide that this rationale applies "with equal force" to persons with serious mental illnesses. There is "no rational basis," he asserts, for treating mentally retarded persons differently from those persons with a mental illness.

Matheney has not convinced us that he has a reasonable possibility of establishing that mentally ill persons are on the same footing as mentally retarded persons under the Atkins rationale. Atkins held that execution of mentally retarded persons was unconstitutional because it violates the Eighth Amendment's prohibition against cruel and unusual punishment. Matheney does not argue that execution of mentally ill persons violates the Eighth Amendment. The United States Supreme Court has held that execution is an unconstitutional punishment for persons who are juveniles, *see* Roper v. Simmons, ___ U.S. ___, 125 S.Ct. 1183, 1194 (2005), who are mentally retarded, Atkins v. Virginia, 536 U.S. at 321, 122 S.Ct. at 2252, and who are insane, *see* Ford v. Wainwright, 477 U.S. 399, 410, 106 S.Ct. 2595, 2602 (1986). But the Supreme Court has not held that mentally ill persons are not subject to the death penalty. *See* Baird v. Davis, 388 F.3d 1110, 1114 (7th Cir. 2004), *cert. denied*, 543 U.S. ____, 125 S.Ct. 1849 (2005).

4

**Conclusion**

Matheney has not met his burden of establishing a reasonable possibility that he is entitled to post-conviction relief.  Accordingly, we decline to authorize the filing of a successive petition for post-conviction relief.  A date for execution of the death sentence will be set by separate order.

Because Matheney has already received extensive judicial review of his death sentence and there is pending before us the State's motion requesting that a date be set for execution of the death sentence, any request for rehearing must be prompt.  Rehearing should not be sought if Matheney intends merely to raise the same arguments we have already addressed.  If he does petition for rehearing, however, the petition must be physically filed with the Clerk no later than five days after this order.

The Clerk is directed to send a copy of this order to counsel of record and to West Publishing for publication in the bound volumes of this Court's decisions.

Done at Indianapolis, Indiana, this 29th  day of August, 2005.

/s/Randall T. Shepard
Chief Justice of Indiana

Shepard, C.J., and Dickson, Sullivan and Boehm, JJ., concur.
Rucker, J., concurs with separate opinion.

Rucker, J., concurring.
 I concur with the majority's decision to deny Matheney's request to file a successive petition for post-conviction relief.  I continue to believe that a sentence of death is inappropriate for a person suffering a severe mental illness.  *See* Corcoran v. State, 774 N.E.2d 495, 502-03 (Ind. 2002) (Rucker, J., dissenting) (expressing the view that a death sentence for a seriously mentally ill person "violates the Cruel and Unusual Punishment provision of the Indiana Constitution.").  Here however, Matheney presents nothing to this court even remotely demonstrating that he is presently mentally ill or that he is "unaware of the punishment [he is] about to suffer and why [he is] to suffer it."  *See* Ford v. Wainwright, 477 U.S. 399, 422 (1986) (Powell, J., concurring).  Rather, although making oblique references to his present mental state, Matheney premises his claim for relief on the ground that he was mentally ill at the time of the murder.  This claim has been decided against Matheney in earlier appeals.  I therefore agree that Matheney has failed to establish a reasonable possibility that he is entitled to post-conviction relief.

5